HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

              Plaintiff,

     v.

MICHAEL JERMAINE POLNETT,

              Defendant.

CASE NO. CR11-5080RBL

ORDER

THIS MATTER comes on before the above-entitled court upon Defendant's Motions to Suppress and for a *Franks* Hearing [Dkt. #26].  The defendant alleges that the affiant omitted material facts about the confidential informant's criminal history and incentives to testify in the affidavit in support of the search warrant entitling him to a hearing pursuant to *Franks v. Delaware*.[1]  Alternatively, the defendant seeks to suppress evidence obtained from his apartment pursuant to a search warrant that lacked probable cause.  Having considered the entirety of the records and file herein, the Court finds and rules as follows:

---

[1] In his motion the defendant speculated as to the identity of the confidential informant. He therefore sought an *ex parte, in camera* hearing pursuant to the procedure set forth in *United States v. Kiser*, 716 F.2d 1268, 1273 (9th Cir. 1983).  In response to the motion, the Government confirmed the identity of the confidential informant and provided his criminal history.  The *Kiser* protocol became unnecessary.

# I.   BACKGROUND

On September 29, 2010, law enforcement officers executed a search warrant at defendant's apartment in University Place, Washington. The search warrant was authorized by Pierce County Superior Court Judge James Orlando based on an Affidavit by Pierce County Deputy Sheriff Kory Shaffer.  [Exhibit A to Defendant's Motion, Dkt. #26].  Inside the apartment, officers found the defendant, his girlfriend, and three young children.  Uncovered in the search was a loaded .40 caliber handgun, loose .40 caliber ammunition, five prescription pill bottles in defendant's name for OxyContin and Oxycodone (four empty and one with 33 OxyContin pills remaining), small quantities of heroin and marijuana, and assorted drug paraphernalia.  [Complaint, pp. 4-6, Dkt. #1].  The defendant was subsequently charged by way of a one-count Indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2) and 924(e).  The government further alleged that the defendant qualifies as an armed career criminal.

# II.   DISCUSSION

## A. __Defendant Is Not Entitled to a *Franks* Hearing__

The defendant argues that Deputy Shaffer's affidavit was deficient because it omitted three crucial facts about the confidential informant.  First, the affidavit did not include the informant's criminal history.  According to the defendant, the criminal history was significant and included felonies and crimes involving dishonesty.  Second, the affidavit did not inform the issuing judge that the informant was facing a pending felony drug charge in Pierce County and that he was working as an informant in exchange for a favorable sentencing recommendation. And, third, the affiant omitted from the affidavit that the informant had been charged and

1  pleaded guilty to misdemeanor domestic violence charges while working as an informant in

2  apparent breach of his cooperation agreement with Pierce County Prosecutors.

3  　　　　According to defendant the above information so undermines the informant's reliability

4  and credibility that including it in the affidavit destroys the finding of probable cause.

5  　　　　Probable cause is a "practical, common sense" determination that, in the totality of the

6  circumstances, a judge can reasonably conclude that there is "a fair probability" that contraband

7  or evidence of a crime will be found in the place to be searched.  *Illinois v. Gates*, 462 U.S. 213,

8  238 (1983).  "The affidavit need only enable the judge to conclude that it would be reasonable to

9  seek the evidence in the place indicated."  *United States v. Valencia*, 24 F.3d 1106, 1109 (9th Cir.

10  1994).

11  　　　　The question to be answered at a *Franks* hearing is whether the affidavit contained

12  deliberately or recklessly false statements without which probable cause would not have existed.

13  *Franks*, 438 U.S. 154, 156 (1978).  The five prong test which must be met in order for a

14  defendant to be entitled to a *Franks* hearing is set out in *Kiser*, 716 F.2d at 1271 (citations

15  omitted):

16  　　　　　a.  "[T]he defendant must make specific allegations that indicate the portions of the

17  　　　　　　　warrant claimed to be false";

18  　　　　　b.  "There must be a contention of deliberate falsehood or reckless disregard for the

19  　　　　　　　truth";

20  　　　　　c.  "The allegations must be accompanied by a detailed offer of proof, preferably in the

21  　　　　　　　form of affidavits";

22  　　　　　d.  "The offer of proof must challenge the veracity of the affiant, not that of his

23  　　　　　　　informant"; and

24

ORDER- 3

1       e.   "[T]he challenged statements in the affidavit must be necessary to a finding of

2           probable cause."

3   Omissions from an affidavit may also entitle a defendant to a *Franks* hearing if the defendant can

4   make a substantial preliminary showing that (1) the affidavit contains intentional or reckless

5   misleading omissions, and (2) the affidavit cannot support a finding of probable cause without

6   the allegedly false information.  *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir.), *cert*

7   *denied*, 531 U.S. 1000 (2000).  If inclusion of the omitted facts would not have affected the

8   probable cause determination, no *Franks* hearing is required.  *Id*.

9        The affidavit in support of the search warrant set forth the following facts:

10        An individual identified as "C/I #551" was cooperating with the Pierce County Sheriff's

11   Department.  The C/I made two controlled reliability buys where he was searched prior to the

12   buys.  No drugs or money were discovered.  He was then given buy money.  The C/I was

13   surveilled to and from the buy location and returned drugs to the officers.  Searched again, the

14   officers found no drugs or money on the C/I.

15        The C/I identified "Mike" as a source of OxyContin.  Based on the investigation, Deputy

16   Shaffer identified "Mike" as Michael J. Polnett.

17        Within the 72 hours prior to presenting the search warrant, the C/I made a controlled buy

18   of OxyContin from Mike.  Prior to the buy, surveillance units observed Mike leave the

19   University Place apartment [an object of the search warrant], get into his Mercedes SUV [also an

20   object of the search warrant], and drive to the agreed location where he met the C/I.  Mike was

21   then followed back to his University Place apartment.  Deputy Shaffer observed Mike's SUV

22   parked in the same spot at the University Place apartment on numerous occasions at all times of

23   the day and night.

24

ORDER- 4

1    Over the course of the investigation, the C/I purchased OxyContin from Mike in public

2    parking lots throughout Pierce County.  During the buys the C/I was constantly surveilled by the

3    Pierce County Sheriff's Department Special Investigations Unit.  During the buys Mike arrived

4    in the Mercedes SUV.

5    The defendant asserts, as he must, that Deputy Shaffer intentionally or recklessly omitted

6    the C/I's criminal history, incentives to cooperate, and breach of his cooperation agreement with

7    the Prosecutor's Office.  The Government counters that the omitted information was not included

8    in the affidavit in order to protect the C/I's identity.  [Response, Exh. 7, Dkt. #30].  Assuming for

9    the sake of this motion that the defendant has made the requisite showing of intentional or

10    reckless acts,[2] he still must demonstrate that the omitted information was material to the

11    determination of probable cause.  *See, e.g., Kiser,* 716 F.2d at 1271.

12    Defendant argues that the C/I's criminal history was material, and when included in the

13    affidavit, probable cause is lacking.  The C/I's criminal history includes crimes involving

14    dishonesty.  The Ninth Circuit requires that when an affidavit omits an informant's criminal

15    history which includes crimes of dishonesty, "additional evidence must be included in the

16    affidavit 'to bolster the informant's credibility or the reliability of the tip.'"  *United States v.*

17    *Elliot*, 322 F.2d 710, 716 (9th Cir. 2003), quoting *Reeves*, 210 F.3d at 1045.  Relying on these

18    cases and on *United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995), the defendant argues that the

19    omission of the C/I's criminal history is fatal to the finding of probable cause because no

20    additional evidence of the C/I's credibility is included in the affidavit.

21

22

23    _____

24    [2] *See Reeves*, 210 F.3d at 1046 (disapproving of police practice of excluding informants'
relevant criminal history even to maintain confidentiality of informant).

In *Elliot*, the search warrant affidavit was largely based on information from a confidential informant.  The informant had visited a residence twice in the ten days prior to the search warrant application and saw scales and methamphetamine in the possession of the defendant and others, and had conversations with the defendant about the defendant's methamphetamine possession and sales.  322 F.3d at 713.  The affidavit did not include the informant's conviction for forgery.  The "additional evidence" in the affidavit the Court found to be sufficient to outweigh the concerns raised by the undisclosed criminal history was the informant's "record of providing six reliable drug-related tips in the preceding three months." *Id*., at 716.

In *Reeves*, the search warrant affidavit was based in part on information that an informant had observed methamphetamine packaged for sale at defendant's residence.  210 F.3d at 1043. The affidavit omitted the informant's prior charge of providing false information to a law enforcement officer.  *Id*., at 1044.  The "additional evidence" in the affidavit the Court found sufficient to outweigh the concerns raised by the undisclosed criminal history was that the "informant had previously provided truthful and reliable information to police that led to three other search warrants, narcotics arrests and convictions."  *Id*., at 1045.

And, in *Meling*, a wiretap affidavit included information from a cooperating witness, the uncle of the defendant.  "Among other things he told the FBI that [the defendant] had spoken to him on several occasions about wanting to get rid of his wife and described a recent telephone conversation in which [the defendant] admitted the poisonings."  47 F.3d at 1552.  The affidavit omitted the cooperating witness' three convictions for forgery and fraud committed over ten years ago and attendant parole violations, a felony conviction one year prior to the wiretap application, and a history of mental illness.  The affidavit also misrepresented the cooperating

witness' motive in coming forward. *Id*., at 1553.  The Court determined that other facts provided

evidence of the cooperating witness' credibility including that the information was adverse to

members of his own family and provided in the face of retaliation.  Also, the fact, if not the

content, of the conversations he divulged were corroborated by the FBI.  *Id.,* at 1555.

In all three cases, the Court of Appeals held that when added to the affidavits the

informants' omitted criminal history involving dishonesty did not destroy probable cause.

In all three cases the information provided is of a distinctly different type than in the

present case.  The information was based on the observations of the informants, done at a time

and in a manner where law enforcement was not present.  An informant relating what he

observed in a residence or recounting a conversation relies heavily on that informant's

credibility.  The instant situation involves not only information from the informant ("the C/I

identified a male named Mike as a source of OxyContin") but also from law enforcement ("the

C/I, while under constant surveillance of the Pierce County Sheriff's Department Special

Investigations Unit, has made a controlled buy of OxyContin from Mike").  Despite defendant's

arguments to the contrary, the C/I's credibility is enhanced by the method in which the buys

occurred.  The controlled buys procedure utilized both in the deal with the defendant and in the

previous two reliability buys minimizes the concern over the C/I's criminal history involving

dishonesty.

The C/I's crimes involving dishonesty occurred between 1991 and 1995.  They included

juvenile adjudications for residential burglary and taking a motor vehicle without permission in

1991, a juvenile adjudication for attempted first degree robbery in 1993, and a conviction for

second degree possession of stolen property in 1995.  As such, it is stale and thus not material.

*See Meling*, 47 F.3d at 1555.  To the extent the criminal history can be considered material, the

1   "additional evidence" in the affidavit that the C/I had made two controlled reliable buys and the

2   deal with the defendant was also done in a controlled manner sufficiently bolsters the C/I's

3   credibility outweighing the concerns raised by the omitted criminal history. *See Elliot*, 322 F.3d

4   at 716.

5        Deputy Shaffer did not include in the affidavit that the C/I was "working off" a 2009

6   felony drug conviction.  As a result of that conviction he was facing 12+ to 20 months.  In

7   exchange for his work as a C/I, the Prosecutor's Office agreed to recommend a reduced sentence.

8   The issuing judge was undoubtedly not misled by this omission. *See United States v. Strifler*,

9   851 F.2d 1197, 1201 (9th Cir. 1988).  ("It would have to be a very naïve magistrate who would

10   suppose that a confidential informant would drop in off the street with such detailed evidence

11   and not have an ulterior motive.  The magistrate would naturally have assumed that the

12   informant was not a disinterested citizen.").  Nor was the information material. *See Meling*, 47

13   F.3d at 1555 ("the fact that an informant has an ulterior or impure motive in coming forward to

14   provide information to the police does not preclude a finding that the informant is nevertheless

15   credible").

16        The affidavit omitted the C/I's recent misdemeanor conviction for domestic violence.  It

17   also did not disclose the apparent breach of the cooperation agreement between the C/I and the

18   Prosecutor's Office.  For the same reasons as stated in the challenge to the C/I's other criminal

19   history, omission of this information was not material to the determination of probable cause.

20        The defendant has failed to make the substantial preliminary showing necessary to obtain

21   a *Franks* hearing.  The affidavit with the omitted facts added provides probable cause.

22

23

24

1   **B.   <u>The Affidavit Provided Probable Cause to Search the University Place Apartment</u>.**

2        The defendant argues that the affidavit did not provide a sufficient nexus between his

3   alleged drug dealing out of his vehicle in public parking lots and his residence thus failing to

4   establish probable cause to search the University Place apartment.   The test for probable cause to

5   search, as earlier stated, is whether in a practical, common-sense determination, it would be

6   reasonable to search for evidence in the place indicated in the affidavit.   *Valencia*, 24 F.3d at

7   1109; *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004).

8        The defendant is correct that the affidavit does not include the usual statement that in the

9   law enforcement officer affiant's experience, drug dealers store evidence of their crime where

10  they live.   It is equally correct, however, that judges reviewing search warrant application are to

11  use their common sense.   *Illinois v. Gates*, 462 U.S. at 238.   It has long been recognized by

12  courts that "in the case of drug dealers, evidence is likely to be found where the dealers live."

13  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986); *United States v. Terry,* 911

14  F.2d 272, 275 (9th Cir. 1990); *United States v. Gill*, 58 F.3d 1414, 1418-19 (9th Cir. 1995).

15       Here, Deputy Shaffer included in the affidavit that surveillance was set up on the

16  University Place apartment associated with the defendant.   When the controlled buy was

17  arranged, the surveillance officer observed the defendant leave the apartment, get into his SUV,

18  and go to the agreed location where the defendant sold drugs to the C/I.   The defendant was then

19  followed back to his University Place apartment and was observed entering his unit.   Deputy

20  Shaffer also indicated that he had done some surveillance on the University Place apartment and

21  observed the defendant's SUV parked in the stall assigned to the unit on multiple occasions at all

22  times of the day and night.

23

24

ORDER- 9

1        In reviewing a challenge to a search warrant, this Court accords significant deference to

2  the issuing judge.  *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 856 (9th Cir.

3  1991).  The surveillance operations listed in the affidavit provided a sufficient basis for Judge

4  Orlando to reasonably infer that the defendant lived at the University Place apartment.  Judge

5  Orlando was entitled to use his common sense and experience to conclude that it was reasonable

6  to search for evidence of drug dealing at defendant's residence.  *Illinois v. Gates*, 462 U.S. at 238

7  ("The task of the issuing magistrate is simply to make a practical, common-sense decision

8  whether, given all the circumstances set forth in the affidavit before him . . . there is a fair

9  probability that contraband or evidence of a crime will be found in a particular place").

10        Defendant's Motion to Suppress Evidence and for a *Franks* Hearing [Dkt. #26] is

11  **DENIED.**

12        **IT IS SO ORDERED.**

13        The Clerk shall send uncertified copies of this order to all counsel of record, and to any

14  party appearing pro se.

15        Dated this 3rd day of June, 2011.

16

17

RONALD B. LEIGHTON

18  UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

ORDER- 10